UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| KRYSTLE THIES<br><br>Petitioner,<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>Respondent. | Case No. 1:15-CV-00258-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Now pending before the Court is Petitioner Krystle Thies's Petition for Review (Dkt. 1), filed July 12, 2015, seeking review of the Social Security Administration's final decision to deny her disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Petitioner applied for SSDI benefits on June 6, 2013, alleging a disability onset date of March 15, 2013. This claim was initially denied on September 4, 2013, and upon reconsideration January 2, 2014. Thereafter, Petitioner requested a hearing before an ALJ, which occurred on January 26, 2015. (AR 8). ALJ Luke Brennan presided over the hearing, at which the Petitioner was present and represented by her attorney, Michael Whipple. An impartial vocational expert, Polly Peterson, testified at the hearing, as did Petitioner herself. (AR 8). At or just before the hearing, on the advice of her attorney, Petitioner requested that her alleged onset date be

**MEMORANDUM DECISION AND ORDER - 1**

amended to September 1, 2013. (AR 233, Petitioner's Brief at p. 15). At the time of the hearing, Petitioner was 27 years old, and had past work experience as a photo parts cashier/delivery person, as an adult care-giver, as an auto parts cashier/delivery driver, and as a home health aide. (AR 20).

On February 24, 2015, the ALJ issued a decision, denying Petitioner's claims and finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 5-19). Petitioner timely requested review from the Appeals Council on February 25, 2014. (AR 25-26.) The Appeals Council then denied review on August 26, 2014. (AR 1-4), rendering the ALJ's decision the Commissioner's final decision. Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits.  She contends that the ALJ erred in three ways: 1) by improperly evaluating the opinions of her treating doctor; 2) by failing to consider the side-effects of Petitioner's medication in assessing her residual functional capacity ("RFC"); and 3) by improperly finding that she was not credible as to the claim that her back pain had worsened around the time of the amended alleged disability onset date. (Petitioner's Brief, Dtk. 13, p. 2).

Though the circumstances are such that there remains doubt as to whether Petitioner is actually disabled, the Court nonetheless concludes that the ALJ's adverse credibility determination was based on an erroneous reading of the medical records, which did in fact demonstrate that Petitioner's back condition worsened around the time of the amended alleged onset date. The Court also concludes that the ALJ's evaluation of the medical opinion evidence was likewise flawed. For these reasons, the Court remands this case to the Commissioner for further proceedings consistent with this order.

## II. STANDARD OF REVIEW

**MEMORANDUM DECISION AND ORDER - 2**

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 12035, 1039 (9th Cir. 1995); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1989). The ALJ is also responsible for drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

**MEMORANDUM DECISION AND ORDER - 3**

Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A.   Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA,

**MEMORANDUM DECISION AND ORDER - 4**

disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that the claimant had not engaged in SGA since the first quarter of 2013, well before the amended alleged onset date of September 2013. (AR 10).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe medical impairments: endometriosis, degenerative disc disease, with a history of prior surgical fusion of the thoracic spine, scoliosis, and migraine headaches. (AR 10).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

**MEMORANDUM DECISION AND ORDER - 5**

awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that Petitioner did not have an impairment or combination of impairments that met or medically equalled the severity of one of the listed impairments. (AR 11-12).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years, or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that the Petitioner had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), and more specifically, that she could lift up to ten pounds on an occasional basis and lift less than ten pounds frequently. (AR 12). The ALJ also found that the claimant would be able to sit for up to six hours in an eight-hour work day, but that she required the ability to alternate between sitting, standing, and walking positions after she had been sitting for 30 minutes. Further, the ALJ determined that the claimant could walk or stand for up to two hours in an eight hour day, with similar stipulations that she be allowed to change positions every 30 minutes. The ALJ also found that claimant could not reach overhead, and only occasionally stoop or crouch. (AR. 12).

**MEMORANDUM DECISION AND ORDER - 6**

These limitations meant that Petitioner could no longer perform her past relevant work.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. The ALJ found, at step five, that Petitioner is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (AR 16-17.)

**B.     Analysis**

   **1.     The ALJ's Credibility Evaluation**

It is well established that if a disability claimant has one or more medically determinable impairments that could give rise to his or her described symptoms, and if there is no evidence that the claimant is malingering, an ALJ is required to make specific findings as to the claimant's credibility and to identify clear and convincing reasons for each finding. *Robbins v. Massanari,* 466 F.3d 880, 883 (9th Cir. 2006). The Commissioner's credibility determination must be supported by findings sufficiently specific to permit the reviewing court to conclude the ALJ did not arbitrarily discredit a claimant's testimony." *See, e.g. Norris v. Colvin,* ___F.Supp.3d___, 2016 WL 410000 (E.D. Washington 2016) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 345–46 (9th Cir.1991). "If there is no affirmative evidence that the claimant is malingering, the ALJ must provide

**MEMORANDUM DECISION AND ORDER - 7**

'clear and convincing' reasons for rejecting the claimant's testimony regarding the severity of symptoms." *Id*. (quoting *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998). *See also, Robbins v. Social Sec. Admin,* 466 F.3d 880 (9th Cir. 2006); *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

In this case, the ALJ made adverse credibility findings, based primarily on two factors. First, the ALJ concluded that "[a]lthough claimant indicated that her impairments worsened around her amended alleged onset date, by producing more limitations in her daily activities, this allegation is inconsistent with written reports in which she indicated there was no change in her condition." (AR 15). The ALJ also found that the claimant's assertion that her impairments had worsened around September of 2013 was "also inconsistent with a lack of medical evidence, suggesting a worsening condition subsequent to her statements that she was capable of performing daily activities including caring for her children." Petitioner challenges the second of these assertions.

Petitioner's argument that her condition became markedly worse in September of 2013 depends mainly on the records of Dr. Dubose, a pain specialist whom Petitioner began seeing when she moved to the Nampa, Idaho area. She first saw Dr. Dubose on September 17, 2013. On that day, Dr. Dubose noted that the patient had a long history of scoliosis and back pain. (AR 348). He also noted that the scoliosis had persisted despite a previous fusion surgery, though he characterized this condition as "mild." (AR 348). On that day Petitioner said her pain had recently gotten worse and that she "can barely do anything now," and that she was having difficulty with the basic activities of daily living. (AR. 349). She described her pain level as being 10 out of 10 at the worst and 3 out of 10 at the best. (*Id.*) Dr. Dubose decided to start her

**MEMORANDUM DECISION AND ORDER - 8**

on a prescription for methadone, but also noted that her pain "had become chronic" and that there was no treatment that was likely to allow a pain-free existence, and that the treatment goal would be to maximize quality of life while minimizing treatment side effects. (AR 350).  Dr. Dubose also decided to treat Petitioner with sacro-iliac joint injections. (AR. 354).

The Petitioner returned to Dr. Dubose's clinic on October 9, 2013 and was seen by another provider. She said then that the methadone was working and that it made her "so happy." She reported that the joint injections, however, had made things worse, to the point where she could not get anything done around the house. (*Id.*). The provider's assessment of that date was somewhat equivocal, in that he found no signs of "pain amplification behavior," but also noted that there was "little objective evidence, so far as behavior, that the patient is in pain." (AR 355).

On November 12, 2013 she returned again and was seen this time by Dr. DuBose.  She talked with him about the "breakthrough pain," and she said the methadone made her sleepy and was not working as well as she would like. She that hydrocodone didn't seem to work as much as it had in the past. (AR 357). Her methadone dose was increased to 10 mg every eight hours (AR 357).

At the next visit, on December 10, 2013, Dr. Dubose noted that her condition had not changed since the previous visit and that she was not engaging in activities of daily living ("ADLs").  (AR 360). Elsewhere in the same office note, however, there is mention that she was was "moving better," and that her ability to engage in ADLs "improved with increased activity." Dr. Dubose also noted that "overall, her affect and mood have improved with VAS consistently reported as lower on the current treatment regimen." (AR 361).

In January of 2014, however, Petitioner reported to Dr. Dubose that she had a new area of

**MEMORANDUM DECISION AND ORDER - 9**

pain or "lump" on her lower sacroiliac joint. She said that this happened a couple of times a year. (AR 365). Dr. Dubose observed tenderness at this site and noted a large "trigger point" over the sacro-iliac joint. Dr. Dubose offered additional injections for treatment, which she declined, and referred her to physical therapy.

In the February 2014 visit, Petitioner said the pain medication was making her sleepy, that she could not accomplish much, and that it was getting harder to participate in the activities of daily living. (AR 368). Dr. DuBose said in his notes from that visit that "no matter what we do from an interventional standpoint she will probably have some component of pain the rest of her life." (AR 368). He said further that "since pain is now chronic no medication, procedure or intervention is likely to allow a pain-free existence. Maximizing quality of life, ADLs, mood while minimizing treatment side effects and dependence on care-givers should be the goal."

After an April 2014 visit, Dr. Dubose wrote in his chart that Petitioner's condition was essentially unchanged from the previous visit and that the methadone was making her sleepy. (AR 374-75). His May 2014 visit note says that her pain medication was working well but that she was still having unwanted side effects, and so he decided to titrate the methadone down. (AR 377). By June 5, 2014 Petitioner had improved in certain respects. Dr. Dubose's notes from that visit indicate that "since the last visit, the patient states she has been doing well on tapering the Methodone. She feels 'way better" from [a] cognitive standpoint." (AR 379). However, Dr. Dubose also noted an increase in her hip pain, although her mood was described as "improved" and her activities of daily living were about the same as before. (*Id.*).

However, two weeks later, on June 18, 2014, the pain had worsened and she said the Duragesic patch Dr. Dubose had prescribed had given her a "wicked headache." (AR 382). Dr.

**MEMORANDUM DECISION AND ORDER - 10**

Dubose also noted that the current medication regimen was less effective and that Petitioner's pain was described as being at a level 8 out of 10. (*Id.*). Further, he described her chronic pain syndrome problem as "currently worsening." (*Id.*)

The Petitioner returned the following week, at which time Dr. Dubose noted, "since the last visit, the pain has worsened. She has been under poor control," and that Petitioner was "tearful and somewhat angry." (AR 385). In July of 2014 the pain was still worsening, so Dr. Dubose elected to restart Methadone. (AR 387-88). The methadone was apparently effective, because several days later, on July 17, 2014, when Petitioner came in for a medication check, Dr. Dubose noted that the medications were "working well," that her mood was "upbeat," and that her ability to engage in the normal activities of daily living had improved somewhat. (AR. 389). This somewhat improved condition appeared stable throughout September of 2014, as her condition was about the same, (AR 391-94). She also said that her condition was "the same" when she saw another provider in Dr. Dubose's office on November 20, 2014, and again on December 17, 2014. (AR. 397, 399). Petitioner's hearing before the ALJ was held the following month.

It is against this evidence that the Court must consider the ALJ's adverse credibility determination. One reason the ALJ discredited Petitioner's testimony about her pain and subjective limitations was because he concluded that her assertion that her condition worsened beginning in September of 2013 was inconsistent with the overall medical evidence. But plainly, a careful review of Dr. Dubose's records indicates that during this time period, Petitioner's long-standing back pain had indeed become a chronic condition, and Dr. Dubose had considerable difficulty in managing that condition.

**MEMORANDUM DECISION AND ORDER - 11**

The medical records from September through December of 2014 do reveal that Petitioner had some degree of improvement in her pain symptoms beginning in September of 2014 and continuing into the fall and winter. The fact that Petitioner may have eventually improved somewhat certainly has bearing on the ultimate question of whether she was entitled to disability benefits, because a condition that can be adequately managed with medication is not necessarily disabling. However, to acknowledge that Petitioner's condition may eventually have improved (after a year of treatment) is not the same thing as saying that her condition never got worse in the first place. The medical records provide ample support that a long-standing problem with back pain became more frequent and more acute around September of 2013. The ALJ's conclusion to discredit Petitioner's credibility because the medical records did not bear out her assertion that her condition worsened is simply not supported by clear and convincing evidence and therefore does not provide a sound basis for the adverse credibility determination.

The Court must next consider whether the ALJ's other reasons for finding Petitioner not fully credible are sufficient to uphold his decision, in spite of the error identified above. The ALJ's second reason for finding that Petitioner was not fully credible was an inconsistency between Petitioner's claim that her condition worsened in September of 2013 and certain written reports indicating that there had been no change in her medical condition at various points after the original application for disability benefits had been filed. (AR 209, 211, 216, 219). While inconsistencies between statements or testimony made under oath and statements made to medical care providers would ordinarily provide a sound basis for an adverse credibility determination, the Court concludes that, on the narrow facts of this case, the ALJ's reliance on these documents was error. The Court has reviewed the documents in question, and notes that

**MEMORANDUM DECISION AND ORDER - 12**

they were not signed by Petitioner herself, but rather, appear to have been prepared by her attorney. These records date from October of 2013 and January of 2014, at a time when Petitioner had been under treatment by Dr. Dubose for only a relatively short amount of time. Petitioner's counsel did not request that the alleged onset date of disability be amended until January 19, 2015, which was days before the hearing before the ALJ. In other words, what the ALJ believed to be an inconsistency attributable to the Petitioner may have simply been a result of her counsel's retrospective reassessment of the strength of the medical evidence about a potentially disabling condition that was developing or changing over time. For these reasons, and on the narrow facts of this case, the perceived inconsistencies between the Petitioner's claim that her symptoms got worse around September of 2013 and the later filed disability reports do not constitute clear and convincing evidence for an adverse credibility determination.

      2.      **Assessment of Medical Source Testimony**

Plaintiff also contends that the ALJ failed to properly evaluate the medical opinion evidence. In particular, she argues that the ALJ did not accord sufficient weight to the opinions of a treating doctor, Dr. Erik Richardson, who saw Petitioner in January of 2013 and conducted a residual functional capacity ("RFC") assessment. (AR at 344-347). After that assessment, Dr. Richardson assigned Petitioner a number of very stringent limitations, among which were that she could not sit for longer than two minutes at a time, could not stand for longer than five minutes at a time, and that she could not sit, or stand or walk, for more than two hours during an eight hour period. (AR. 345). Dr. Richardson also said that any job Petitioner might seek would need to allow for periods of walking around, and that she would have to walk every five or ten minutes, for approximately seven minutes each. (AR 350). Dr. Richardson further opined that

**MEMORANDUM DECISION AND ORDER - 13**

Petitioner would need to take unscheduled breaks approximately nine times in an eight hour workday, and that she would need ten minutes of rest before returning to work. (AR 346). He also assigned a number of functional limitations on activities such as carrying, twisting, stooping, climbing, and reaching.

The ALJ's stated reasons for rejecting Dr. Richardson's opinions were as follows. First, he stated that he was affording only partial weight to those opinions because they were "not consistent with the records as a whole, and in particular, the claimant's self-report of her daily functioning." (AR 16). He also noted that Dr. Richardson's opinion that claimant could not sit for more than two minutes at a time was questionable, given that she sat through the hearing, and that the ALJ's opinion that claimant would be absent from work up to four days a month was speculative. Ultimately, the ALJ elected to give more weight to the assessment of Dr. James Bates, who had assessed Petitioner in August of 2013 and concluded that she was capable of working at the light to sedentary levels. (AR 16).

The ALJ's reasons for rejecting Dr. Richardson's opinions were insufficient. In the first place, one of the ALJ's primary stated reasons for rejecting the Richardson opinion was his apparently belief that it was inconsistent with the claimant's self-reports of her daily functioning. However, that reason does not support the ALJ's decision, because, as discussed above, the ALJ's adverse credibility determination was itself flawed, and based upon a misreading of the medical evidence, particularly the records of Dr. DuBose. And, just as fundamentally, the ALJ's decision to give greater weight to the opinion of Dr. Bates was erroneous, because that opinion was generated before Petitioner's amended alleged onset date of September 2013. As one district court has recently noted, it is "particularly problematic," for an ALJ to rely on medical opinions

**MEMORANDUM DECISION AND ORDER - 14**

from before an amended alleged disability onset date where he also fails to discuss significant probative evidence dated after the alleged date of onset that contradicted his findings. *Tippin v. Colvin,* 2016 WL 2984275 at *2 (W.D. Wash. 2015). Here, the ALJ did not fail to consider the medical records from Dr. DuBose indicating that Petitioner's condition had worsened, but he did mis-characterize that evidence, which amounts to much the same thing.

Nor is the Court persuaded by the Commissioner's arguments that Dr. Richardson opinions were invalid because he did not provide the evidentiary basis for his conclusions. (Respondent's Brief at p. 7-8). Petitioner has pointed to evidence that suggests that Dr. Richardson did not reach his opinions out of the blue, but instead, was relying on information he received from Dr. DuBose. In particular, Petitioner points to a portion of the RFC form in which Dr. Richardson indicated that he was basing his opinions on "pain management notes/studies," a notation which Petitioner takes to mean that Dr. Richardson had reviewed Dr. Dubose's records before filling out the RFC form. (AR 344). While the Commissioner argues that there is no evidence for this assertion, Dr. Richardson was the provider who referred the claimant to Dr. Dubose in the first place, and at least some of Dr. DuBose's treatment record were directly addressed to Dr. Richardson. (AR 348-351). For these reasons, the Court is not persuaded by the Commissioner's suggestion that Dr. DuBose's opinions were wholly speculative.

Finally, the Court considers the ALJ's assertion that Dr. Richardson's opinions as to absenteeism were speculative, as well as his reliance on the contradiction between Dr. Richardson's opinion that the claimant could only sit for two minutes at a time and the fact that she sat through the whole hearing without apparent difficulty. While the ALJ was on somewhat more solid ground here, these rationales are insufficient to overcome the more fundamental flaws

**MEMORANDUM DECISION AND ORDER - 15**

in the ALJ's opinion discussed above, namely, the fact that the adverse credibility determination rested on the ALJ's erroneous belief that Petitioner's condition did not get worse around September of 2013, when the medical records support that assertion, and the fact that the ALJ was relying primarily on facts and information from before the amended alleged onset date.

### 3. Side Effects of Medication

Finally, the Court also concludes that the ALJ failed to properly consider the side effects of medication. "In determining a claimant's limitations, the ALJ must consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medication. . . . [S]ide effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized. Thus, when a claimant testifies she is experiencing a side effect known to be associated with a particular medication, the ALJ may disregard the testimony only if he support[s] that decision with specific findings similar to those required for excess pain testimony." *Burger v. Astrue,* 536 F.Supp.2d 1182 , 1189 (C. D. California 2008) (citing *Erickson v. Shalala*, 9 F.3d 813, 817-18 (9th Cir. 1993).

In this case, Petitioner testified that when she was taking 10 milligram methadone it helped tremendously with the pain, but she was always sleeping. (AR 48). She testified that the lower dose of methadone combined with oxycodone helped her to stay a little more alert and at this dosage she "wasn't a zombie all the time." However, she also testified that the lower dose did not entirely take her pain away so it was "sort of a trade-off." (AR 49). Further, she testified to having some difficulty concentrating and remembering things even after the dosage of methadone was lowered. (AR 49, 57). However, the ALJ did not consider side effects of methadone at all, except to state that they were not as bad when the dose was lowered. (AR 15).

**MEMORANDUM DECISION AND ORDER - 16**

He also gave no consideration to the effect of diminished concentration and forgetfulness on Petitioner's ability to work. Therefore the side effects of methadone (or any other medications that Petitioner is currently on) should be considered on remand along with all other relevant evidence.

## CONCLUSION

While the ALJ's decision was premised on legal error that requires reversal, it remains to be seen on remand whether Petitioner is in fact disabled. The Court recognizes that the very fact that Petitioner elected to amend her alleged onset date may have some bearing on her credibility, and certainly, the log of daily activities that she filled out in her initial application for disability benefits is indicative of someone who was, at least at that point, able to perform the usual activities of daily living. *Cf. Parris v. Colvin,* 2015 WL 1263225 at (W.D. Wa. 2015) (finding that inconsistencies in the alleged onset dates may have some bearing on credibility but nonetheless remanding because the ALJ did not provide clear and convincing reasons for an adverse credibility finding). However, the Petitioner elected to amend her alleged onset date on the advice of her attorney, probably recognizing that the evidence from before September 2013 would not have been sufficient to establish her claim for disability. (AR 197-205). While the Court can understand that this sequence of events may have caused the ALJ to view the Petitioner's claims with some degree of skepticism, at the same time, Dr. Dubose's records clearly indicate that Petitioner's long-standing intermittent back pain did in fact become a chronic condition around the fall of 2013. For this reason, the ALJ's decision to rest his credibility determination on the notion that the records did not indicate that her condition had worsened was an error that requires a remand. Discounting the Petitioner's credibility for this

**MEMORANDUM DECISION AND ORDER - 17**

reason was not a discrete error that can be cordoned off from the rest of the decision under a harmless error analysis, but rather, was a decision that had repercussions for other aspects of the decision as well, particularly the ALJ's decision to give little weight to the opinions of Dr. Richardson. Upon remand, updated medical records will be crucial evidence on the question of whether Petitioner is in fact disabled or whether her chronic pain condition has stabilized under continued treatment such that she is able to work. The ALJ may also wish to obtain an updated residual functional capacity assessment from Dr. Bates, Dr. Richardson, or any other medical provider deemed appropriate.

## ORDER

For all the foregoing reasons, the Petition for Review (Dkt. 1) is GRANTED, and this case is REMANDED to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g) for further proceeding consistent with this opinion.



DATED:  **September 30, 2016**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**